Eric Stephenson #9779
Stephenson Law Firm PLLC
Attorney for Plaintiff
299 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone: (844) 529-2112
Facsimile: (801) 906-5799
Email: Eric@Utahjustice.com

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| Alexis Reid and Taylor Reid,<br><br>Plaintiffs,<br><br>vs.<br><br>LVNV Funding LLC; Constantino Law Office P.C.; and Gregory Constantino,<br><br>Defendants. | **MOTION FOR ATTORNEY'S FEES**<br><br><br><br>Case Number: 2:14-cv-00471-DAK<br><br>Judge: Dale A. Kimball |

Plaintiff, by and through her attorney, hereby respectfully requests this Court for an award of her reasonable attorney's fees incurred in pursuing this action pursuant to Rule 54(d)(2) of the Federal Rule of Civil Procedure, DUCivR 54-2, and 15 U.S.C. §1692k(a)(3) and by the agreement of the parties negotiated in a Settlement Conference on May 10, 2016.

### BACKGROUND FACTS IN SUPPORT OF MOTION

**Pleadings**

On June 6, 2014, Plaintiff filed the Complaint in this action, seeking damages, attorney's fees, and costs.[1] Defendants filed their Answer on July 18, 2014.[2] In their Answer, Defendants

---

[1] Complaint (ECF No. 2)
[2] Answer to Complaint (ECF No. 7)

asserted numerous defenses and denied liability and all of the substantive allegations against them.[3]

**Written Discovery**

After discussing management of the case with the Defendants' counsel, the Plaintiff prepared and submitted an Attorney Planning Meeting Report[4] and a draft Scheduling Order which was entered by this Court on October 20, 2014.[5] On October 28, 2014, the parties exchanged Initial Disclosures and Plaintiff prepared and propounded discovery requests to both Constantino Law Office and to Gregory Constantino.

Defendants responded to Reid's discovery requests by asserting boilerplate objections, non-responsive answers, qualified responses that did not fairly meet the substance of the questions posed, and by dumping over a thousand printed pages of material on Reid without any labels corresponding to the specific request to which the documents were responsive.[6] Defendants also refused to produce any of the requested documents in their electronic format as they are originally kept as requested by Reid and as required by Rule 34 of the Federal Rules of Civil Procedure.[7] Defendants also withheld several critical documents but did not request a protective order to sustain or defend their refusals.[8]

---

[3] Answer to Complaint (ECF No. 7)
[4] Attorney Planning Meeting Report (ECF No. 18)
[5] Scheduling Order (ECF No. 19)
[6] Decl. in Support of Motion for Attorney's Fees at 13
[7] Fed. R. Civ. P. 34
[8] Decl. in Support of Motion for Attorney's Fees at 11 and 13

**Motion for Judgment on the Pleadings**

On October 29, 2014, Defendants filed a Motion for Judgment on the Pleadings.[9] After extensively briefing and arguing the issues at oral arguments, Reid prevailed when this Court denied Defendants' motion on March 4, 2015.[10]

**Depositions**

Depositions of Alexis Reid and Taylor Reid occurred on April 9, 2015. A Rule 30(b)(6) deposition of Defendant Gregory Constantino was held April 10, 2015 and a deposition of Defendants' former employee Cio Hunt was held on April 22, 2015.

**Allocation of Fault**

Defendants filed a Notice of Intent to Allocate Fault to three non-parties on April 17, 2015.[11] Plaintiffs filed a Motion to Strike that notice on May 4, 2015.[12] This Court agreed with the Plaintiff that allocation was both "invalid" and "untimely" when it ruled in Reid's favor and granted Reid's motion to strike Defendants' allocation of fault on June 3, 2015.[13]

**Expert Report**

Defendants filed an Expert Report seeking to admit the expert testimony of former state court Judge John Paul Kennedy on June 3, 2015.[14] Reid filed a Motion in Limine to Exclude

---

[9] Motion for Judgment on the Pleadings (ECF No. 20)
[10] Order Denying Motion for Judgment on the Pleadings (ECF No. 27)
[11] Rule 9-1 Notice of Allocation of Fault (ECF No. 31)
[12] Motion to Strike Notice of Allocation of Fault (ECF No. 33)
[13] Order Granting Plaintiffs' Motion to Strike Allocation of Fault (ECF No. 37)
[14] Expert Witness Report of John Paul Kennedy (ECF No. 38)

Expert Testimony on June 22, 2015.[15] Reid prevailed on that request to preclude Defendants'

expert witness and report when this Court granted her motion on January 20, 2016.[16]

**Cross Motions for Summary Judgment**

      Plaintiffs filed a Motion for Partial Summary Judgment[17] on July 7, 2014 and Defendants

filed a Cross Motion for Partial Summary Judgment[18] on September 8, 2015. On January 20,

2016 this Court granted Alexis Reid judgment on her FDCPA claims against the Defendants and

held that Taylor Reid lacked standing.[19] In that same order, this Court held that Defendants' bona

fide error defense was without merit and denied all of the Defendants' remaining requests for

summary judgment.[20]

**Pretrial Disclosures, Pretrial Order, Voir Dire, and Exhibit Lists**

      Defendants filed their pretrial disclosures on December 18, 2015.[21] Plaintiff objected to

Defendants' disclosures on December 23, 2015.[22] Plaintiff filed her pretrial disclosures on

December 21, 2015 and then amended those disclosures on January 2, 2016.[23] Plaintiff also

drafted a proposed pretrial order, proposed voir dire questions for the jury, obtained and

organized exhibits, and drafted a proposed list of exhibits.[24] Defendants then objected to

---

[15] Motion in Limine to Exclude Expert Testimony (ECF No. 39)
[16] Memorandum Decision and Order (ECF No. 64)
[17] Motion for Partial Summary Judgment (ECF No. 40)
[18] Cross Motion for Partial Summary Judgment (ECF No. 48)
[19] Memorandum Decision and Order (ECF No. 64)
[20] *Id.*
[21] Defendants' Pretrial Disclosures (ECF No. 55)
[22] Plaintiff's Objections to Defendants' Pretrial Disclosures (ECF No. 57)
[23] Plaintiff's Pretrial Disclosures (ECF No. 56); Pl's Amended Pretrial Disclosures (ECF No. 59)
[24] Decl. in Support of Motion for Attorney's Fees at 10

Plaintiff's disclosures on January 4, 2016.[25] Defendants never submitted their objection for a decision by this Court but Plaintiff filed a Request to Submit her Objections on April 21, 2016.[26] In response to that request to submit, Defendants filed a Motion to Strike Plaintiff's Request to Submit and Pretrial Disclosures on April 28, 2016.[27] The Court then issued an order extending the trial date which mooted the objections, but the Court also granted Plaintiff the right to depose Defendants' previously undisclosed witnesses.[28]

**Renewed Request to Admit Previously Excluded Expert Testimony**

Despite the Court's previous ruling striking Defendants' expert witness, Defendants filed a Motion in Limine attempting again to admit the testimony of their expert witness Judge Kennedy on April 18, 2016.[29] Plaintiffs filed their Response Memorandum on April 29, 2016.[30] Because the parties reached a settlement in this case, the Defendants never filed any reply memorandum or request to submit the issue for decision.

**Settlement Conference**

The parties attended a settlement conference on May 10, 2016 and at that time the parties entered into a settlement agreement resolving all causes of action in the matter and agreeing that Defendants would pay Plaintiff's reasonable attorney's fees as part of the essential terms of their settlement of this case.[31]

---

[25] Defs.' Objections to Pl's Pretrial Disclosures and Amended Pretrial Disclosures (ECF No. 62)
[26] Request to Submit Plaintiff's Objections to Defendants' Pretrial Disclosures (ECF No. 74)
[27] Motion to Strike Plaintiff's Request to Submit and Pretrial Disclosures (ECF No. 76)
[28] Order (ECF No. 78)
[29] Motion in Limine Concerning Expert Witness (ECF No. 73)
[30] Response Memorandum to Motion in Limine (ECF No. 77)
[31] Settlement Conference Report (ECF No. 79)

## STANDARD OF REVIEW

Because no fixed formula exists for calculating attorney's fees in FDCPA actions, courts generally begin with calculating the lodestar, consisting of the reasonable hourly rate for the attorney's work multiplied by the number of hours reasonably expended in prosecuting the action.[32] The court then adjusts the lodestar figure, up or down, based on a variety of factors, including "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation."[33] "'[T]he most critical factor' in determining the reasonableness of the award 'is the degree of success obtained.'"[34] "Success must be measured not only in the amount of the recovery but also in terms of the principle established and the harm checked."[35]

## ARGUMENT

I.   **Plaintiff's lawsuit was successful and therefore Plaintiff, as the prevailing party, is entitled to a mandatory award of her attorney's fees and costs.**

Under its plain language, the FDCPA requires an award of attorney fees and costs to a successful consumer Plaintiff:

> ". . .any debt collector who fails to comply with any provision of this
> subchapter with respect to any person is liable to such person in an amount
> equal to the sum of - [actual damages] [statutory damages] and

---

[32] *Schlacher v. Law Offices of Phillip J. Rotche*, 574 F.3d 852 at 856 (*citing Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1493 (10th Cir. 1994)

[33] *Id*. at 856-57 (*citing Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999); *Strange v. Monogram Credit Card Bank of Ga*., 129 F.3d 943, 946 (7th Cir. 1997))

[34] *Hensley v. Eckerhart,* 461 U.S. at 436

[35] *Zagorski v. Midwest Billing Services, Inc*., 128 F.3d 1164, 1167 (7th Cir. 1997)

> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."[36]

The award of attorney fees and costs to a prevailing plaintiff is mandatory.[37] Regardless of the amount of damages awarded, once a violation of the FDCPA is established, "the statute requires the award of costs and reasonable attorney's fee."[38] Congress undoubtedly intended for the prevailing consumer to recover his or her reasonable attorney's fees and costs.

> "Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, the Act **mandates** an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general."[39]

The reason for the mandatory nature of the award of attorney's fees and costs is to compensate the consumer for his role in privately enforcing the FDCPA.[40] To that end, the fee shifting provision helps attract competent counsel.[41] The fee shifting provision is also designed "to serve as a deterrent to defendants and others similarly situated."[42]

---

[36] 15 U.S.C. §1692k(a)(3)

[37] 15 U.S.C. §1692k(a)(3); *Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991); *Schlacher v. Law Offices of Phillip J. Rotche & Assoc., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009)

[38] *Piples v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 28 (2d Cir. 1989); *Mace v. Van Ru Credit*, 109 F.3d 338, 344 N.3 (7th Cir. 1997)

[39] *Graziano*, 950 F.2d 107, 113 (3d Cir. 1991) (*emphasis added*). *See also DeJesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 235 (1st Cir. 1990) (awarding attorney fees under the Truth in Lending Act)

[40] *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995); *see also*, *Murphy v. Ford Motor Credit Co.,* 629 F.2d 556 (8th Cir. 1980) (Truth in Lending case)

[41] *Zagorski v. Midwest Billing Services, Inc.,* 128 F.3d 1164, 1167 (7th Cir. 1997)

[42] *See Goins v. JBC & Assocs., P.C.,* 2005 WL 3536147, at *3 (D. Conn. Nov. 28, 2005) (noting other FDCPA cases against debt collector in declining to reduce lodestar)

Plaintiffs' Complaint alleges various violations of the FDCPA, 15 U.S.C. §§ 1692 *et seq.* for which she successfully prevailed. Moreover, Defendants agreed to pay Plaintiff's attorney's fees as part of the essential terms of their settlement of this case.[43] A party is deemed the prevailing party if it succeeds on any "significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."[44]Accordingly, Plaintiff is the prevailing party and should be awarded her attorney's fees as requested.

## II.    The hourly rate for Plaintiff's counsel is reasonable.

"[T]he best evidence of the market value of legal services is what people pay for it. Indeed, this is not 'evidence' about market value; **it is market value**."[45] Furthermore, "[t]he attorney's actual billing rate for comparable work is **'presumptively appropriate'** to use as the market rate."[46]

Plaintiff's counsel Eric Stephenson's current hourly rate is $320.00. In this case it was contingent, but he charges that same rate in contingent-fee and hourly rate cases and even his flat-fee agreements are formulated on his hourly rate.[47] Plaintiff's counsel's hourly rate is commensurate with his fees earned in other matters, including collection defense litigation, credit correction representation, criminal defense, and identity theft recovery representation even though, according to Justice Posner,

---

[43] Settlement Conference Report (ECF No. 79)

[44] *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)

[45] *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir.1996) (*emphasis added*)

[46] *People Who Care v. Rockford Board Of Education, School District No.* 205, 90 F.3d 1307, 1310 (7th Cir. 1996) (*emphasis added*); *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999)

[47] Decl. in Support of Motion for Attorney's Fees at 3-4

"A contingent fee **must be higher** than the fee for the same legal services as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders, but also for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of a conventional loan."[48]

Plaintiff's counsel's experience also justifies his hourly rate. He began practicing law nearly 13 years ago, is admitted to practice law in five states, is experienced in prosecuting FDCPA cases, and has focused his practice primarily on FDCPA litigation.[49] He has also augmented his practice by attending hundreds of hours of continuing legal education seminars, most of which focused on consumer and FDCPA litigation matters.[50]

Plaintiff's counsel's rate also corresponds with the prevailing market rates. For example, the most recent United States Consumer Law Attorney Fee Survey Report reveals that the average hourly rate for all small firm attorneys in the Western Region (AZ, CO, ID, MT, NM, NV, UT, WY) is $328.00 per hour.[51] When broken down to reflect the Plaintiff's counsel's experience, that figure rises to $356 per hour.[52]

Plaintiff's counsel's hourly rate is also reflective of the scarcity of attorneys in Utah that focus their practice on FDCPA and other consumer litigation matters. For instance, a search of the membership roster of the National Association of Consumer Advocates (NACA), the most prominent organized group of consumer attorneys in the country, reveals only five member attorneys in the entire State.

---

[48] Posner, Economic Analysis of Law (4th ed. 1992) 534, 567 (*emphasis added*)
[49] Decl. in Support of Motion for Attorney's Fees at 1-2
[50] *Id.*
[51] Decl. in Support of Motion for Attorney's Fees, Ex. P-1 at 28, 30, and 44
[52] *Id.*

A Google search for the phrase "Utah FDCPA attorney" reveals Plaintiff's attorney in the first two positions with only four other Utah consumer protection attorneys listed in the top fifty results.[53] The remaining listings are informational sites, marketing firms, bankruptcy attorneys, general practitioners, and collection attorneys and associations. None of the others listed in the top fifty results focus as narrowly on FDCPA litigation as Plaintiff's attorney. Such scarcity shows that FDCPA litigation is a specialized and complex practice of law and that significantly limits the number of experienced and skilled attorneys available to Utah consumers.[54]

**III.    Plaintiff's hours incurred to prevail in this case are reasonable.**

Plaintiff's attorney incurred at least 434 hours in pursuing this case to its successful completion. Each of those hours were necessary given the high degree of success achieved, the unusually vigorous defense, the complexity of the issues, and the public interest in the outcome of this case. Nonetheless, Plaintiff's counsel has voluntarily offered to reduce the hours for which he seeks compensation to only 382.40 hours for this motion. Plaintiff is also requesting compensation for an additional $500.00 for fees she paid to a paralegal to assist in the case.

**a.   Plaintiff obtained a high degree of success.**

Throughout this case, Defendants adopted the position that they did absolutely nothing wrong, and until they lost the case on summary judgment, never made any serious attempts to resolve it. Instead, they obstructed discovery, delayed resolution of the issues, tried to blame others for their conduct, and sought judgment in their own favor.[55] In the end, however, Plaintiff substantially prevailed. She defeated every attempt Defendants made to escape or reduce their

---

[53] Decl. in Support of Motion for Attorney's Fees at 2-3
[54] *Id.*
[55] *See* Decl. in Support of Motion for Attorney's Fees

liability, she defeated Defendants' attempt to admit improper expert testimony, she discovered documents and information Defendants tried to conceal, she obtained summary judgment against the Defendants, and she obtained a settlement in the case that far exceeded Defendants' initial nuisance value offer.

Indeed, to say Reid obtained a high degree of success in this case is an understatement. She prevailed on every issue of any significance and she held the Defendants' publically accountable for their deceptive and unlawful conduct. This "degree of success obtained" is the most important consideration when the court determines what is a reasonable fee award.[56]

**b.  Defendants' unusually vigorous defense of this case required a higher expenditure of time for the Plaintiff's attorney to prevail.**

It is self-evident that the harder a defendant fights in a consumer action, the larger the fees ultimately become. The fifth circuit, in *McGowan v. King, Inc*., laid bare this reality of consumer litigation when it held:

> "The borrower's counsel did not inflate this small [Truth-In-Lending] case into a large one; its protraction resulted from the stalwart defense. And although defendants are not required to yield an inch or to pay a dime not due, **they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost**."[57]

In this case, Defendants employed at least four attorneys, fought every issue, and attempted a broad range of excuses to escape liability for their illegal conduct. Were it not for Defendants' vigorous defense of this case, Reid's pursuit of success would have been far less

---

[56] *Hensley*, 461 U.S. at 436; *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995)

[57] *McGowan v. King, Inc*., 661 F.2d 48, 51 (5th Cir. 1981) *emphasis added*; *See also*, *Diettrich v. Norwest Airlines, Inc*., 967 F.Supp. 1132 (E.D. Wis. 1997)

time-consuming. For example, at the pleading stage, Defendants could have simplified the case by merely admitting that certain allegations in the Complaint were true. Instead, Defendants denied virtually every allegation in the Complaint and asserted a laundry list of affirmative defenses.[58] To address those denials and defenses, Plaintiff was forced to expend considerable effort just to cover issues Defendants should have readily conceded.[59]

Indeed, in written discovery, Defendants objected to, denied, qualified, or improperly rephrased almost every request for admission posed.[60] They objected to and refused to answer several requests for production and dumped over a thousand pages of documents on the Plaintiff without any labels or meaningful identification.[61] Defendants also refused to produce any documents at all in their native electronically searchable format as requested and required by the Federal Rules of Civil Procedure, and Defendants even concealed documentation material to the Plaintiff's case.[62] To address Defendants' failures to adequately respond to discovery, Plaintiff's counsel had to spend more time preparing for depositions, request documents by subpoena, dig through voluminous court records of documents Defendants withheld, interview a witness, and conduct extensive Internet searches to find information readily available to the Defendants.[63]

In depositions, Defendants also delayed and obstructed a full and fair questioning. Instead of merely answering the questions posed, Defendants responded by arguing, rambling, repeating previous answers, ignoring the questions posed, re-phrasing the questions posed, and by reciting

---

[58] Answer (ECF No. 7); Decl. in Support of Motion for Attorney's Fees at 6-7
[59] Decl. in Support of Motion for Attorney's Fees at 5 and 13
[60] Decl. in Support of Motion for Attorney's Fees at 13
[61] *Id.*
[62] *Id.*
[63] *See* Decl. in Support of Motion for Attorney's Fees

exactly the same nonresponsive answers *ad nauseum*.[64] Constantino was so uninterested in proceeding fairly he actually took a telephone call during his deposition and outright refused to answer several questions.[65]

As discussed above, motion practice was even more time-intensive and involved several critical issues such as allocation of fault, Defendants' requests for judgment on the pleadings and summary judgment, and two attempts by Defendants to admit an expert witness into the case. In the end, Plaintiffs resoundingly prevailed on these issues but only after fighting a vigorous battle with Defendants who obnoxiously refused to accept that it was unlawful for them to garnish the wages of a completely innocent party.

### c. The legal issues in this case were complex.

Originally, this was a simple case. Defendants illegally garnished Reid's income for a debt she did not even arguably owe. Despite that initial simplicity, Defendants raised multiple complicated defenses such as, the bona fide error defense, mitigation of damages, allocation of fault, unclean hands, etc., that Plaintiff could not ignore. Defendants further complicated the case by attempting to allocate fault to non-parties and by twice attempting to introduce an expert witness this Court deemed to be both "irrelevant and improper."[66] Even after that witness was excluded by this Court, Defendants later tried to bring that same expert back into the case.[67]

Defendants additionally complicated the issues by refusing to provide documents and access to witnesses, by refusing to concede undeniable facts, and by refusing to answer simple

---

[64] Decl. in Support of Motion for Attorney's Fees at 14
[65] *Id.*
[66] Memorandum Decision and Order (ECF No. 64)
[67] Motion in Limine Concerning Expert Witness (ECF No. 73)

questions in both written and oral discovery.[68] Then, when Plaintiff filed a straightforward request for partial summary judgment on one simple issue, Defendants filed a complex cross motion seeking judgment on most of the Plaintiff's causes of action and raising the complex matter of their bona fide error defense.[69] Ultimately, Defendants' efforts to needlessly complicate the issues in this case failed and Reid prevailed. Nonetheless, Defendants ought to now bear the burden created by their efforts.[70]

### d. The public interest advanced by this litigation is significant.

"Success is not measured only by the amount of recovery but also in terms of the significance of the legal issue on which the plaintiff prevailed and the public purpose the litigation served."[71] Here, the public interest in this case significant.

Reid stopped an illegal garnishment and proved Constantino violated the FDCPA by garnishing her wages for a debt she did not owe. Because of that ruling, every collection attorney, debt collection agency, and individual collector is now on notice to employ greater caution when requesting garnishments to assure they are garnishing from the actual debtor. That extra caution protects innocent victims of identity theft and mistaken identity but also shelters the banks and employers who process garnishment orders. Constantino is an established authority on the FDCPA, but he did not consider his conduct to be illegal, unethical, or even negligent.[72] Now the benchmark is set.

---

[68] *See* Decl. in Support of Motion for Attorney's Fees
[69] *Id.*
[70] *McGowan v. King, Inc.*, 661 F.2d 48, 51 (5th Cir. 1981)
[71] *Morales v. City of San Rafael*, 96 F.3d 359, 365, *as amended on denial of rehearing and rehearing en banc*, 108 F.3d 981 (9th Cir. 1997)
[72] According to his own description; "Mr. Constantino has extensive experience in civil litigation, commercial collections, retail and consumer collections, replevin actions, foreclosures,

The public interest in this case cannot be overstated. The practice of law is a critical public function which is why attorneys are held to high standards of ethics and competence. As for Defendants, Gregory Constantino is a well-known debt collection attorney whose firm sues thousands of Utah consumers every year. While that itself is significant, Constantino also educates other attorneys how to sue consumers and how to comply with the FDCPA. That role exponentially increases the public interest in this case since the attorneys he instructs will be involved in tens of thousands of lawsuits and potentially hundreds of thousands of attempted collections against Utah consumers every year.[73] "Unlike most private tort litigants, [a plaintiff who brings an FDCPA action] seeks to vindicate important … rights that cannot be valued solely in monetary terms,"[74] "and congress has determined that the public as a whole has an interest in the vindication of the statutory rights."[75]

    e.  **Plaintiff's counsel has exercised sound discretion in voluntarily writing off appropriate amounts of time worked on this case.**

Plaintiff's counsel incurred at least 434 hours of time litigating this case. That time could have been substantially reduced if only Defendants would have attempted in good faith to resolve this case in its early stages rather than complicating the issues and litigating the case so vigorously. Nonetheless, Plaintiff's counsel has voluntarily reduced the amount of time for which he is requesting compensation for purposes of this motion, to only 382.40 hours plus the

---

creditors rights in bankruptcy and construction claims. Mr. Constantino has regularly collected debts for major credit card companies, banks, large national debt buyers, local area hospitals and collection agencies." Retrieved from http://www.constantinolaw.com/attorney.html

[73] Eighty-five percent (71,620) of the total civil litigation cases filed in the Utah courts in 2015 were debt collection cases.

[74] *Tolentino v. Friedman*, 46 F.3d 645, 651-652 (7th Cir. 1995) *citing City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)

[75] *Id.*

$500.00 in fees he paid to a paralegal to assist him in the case.[76] Plaintiff's counsel has also voluntarily deducted time he did not closely track and costs for depositions, transcriptions, postage, copying services, legal research, mileage, travel, and other costs from his billing of this case which exceeded $2,800.00.

## CONCLUSION

Plaintiff resoundingly prevailed in this case but only after being forced to expend a substantial amount of effort to frustrate Defendants' vigorous defense of this case and to neutralize the complex issues Defendants created. Everything Defendants did to defend this case was engineered to extend the litigation and avoid the inevitable. In sharp contrast, Plaintiff's efforts moved this case toward resolution and she obtained resounding success in her favor. Under the circumstances, Plaintiff's attorney's hourly rate is reasonable, the hours her counsel expended in this case are reasonable, and her request for an award of attorney's fees is reasonable.

Plaintiff therefore respectfully requests an award of her attorney's fees in the amount of $122,368.00 for 382.40 hours at his standard hourly rate of $320.00. She is also requesting an award of an additional $500.00 for fees she paid a paralegal to assist with the case. Accordingly, Plaintiff respectfully requests an award of her attorney's fees reasonably incurred to prevail in this case in the total amount of $122,868.00.

DATED June 20, 2016

/s/ Eric Stephenson
Attorney for Plaintiffs

---

[76] This voluntary reduction is intended to ease this Court's burden in calculating the amount of hours to award Plaintiff's counsel. The reduction is not intended and should not be construed as a waiver of those fees for any other purpose including any appeals filed in this case.

CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2016 a true and correct copy of the foregoing MOTION

FOR ATTORNEY'S FEES was filed through the Court's CM/ECF system which sent notice to

counsel of record.

/s/ Eric Stephenson
Attorney for Plaintiff